May it please the Court, I would like to reserve two minutes for rebuttal. You want to introduce yourself? Yes. My name is Roberta Anner Hughes, and I, along with my partner Cliff Edwards, represent the Bradys in this action. As I understand the Court's recent ruling, the Court only wants to hear argument about our motion for certification to the Montana Supreme Court. We understand that this case has been certified not once but twice by the lower district court to the Montana Supreme Court. It should be noted that the Court did accept certification in the first instance, but once it had been fully briefed, the Court decided that it did not want to decide an issue of such important constitutional basis on a record that had not been developed. When it was sent back a second time, the Court made the same observation. It is years after that fact. We have completed discovery. We have put together literally thousands of pages of discovery. We've taken 27 depositions. We've each hired experts. The file is now more than developed and ripe for decision by the Montana Supreme Court. This is a matter of process. Assuming that we agreed to take a shot at certification, what would be the process in the Montana Court? Would it go on the record developed in the district court here? The certification obviously has to be a question of law. What is your understanding of what would happen to you folks if you wind up now going over on certification to the Montana Court? What would be presented to it? As I have looked at the rule, it is not clear what would be presented to it. Obviously, this Court would come forward with a question to be presented, that being the constitutionality of the current workers' compensation statute in the state of Montana. At that point, the Court would order briefing. I suggest that the Court will likely order briefing that was similar in the first instance, only having a cite to the record itself. And then the record that would be available to the Montana Supreme Court would be the record you've developed in the district court? Yes, Your Honor. Is that before us now as part of the excerpt of record, or is there something more that you would add? One of the things we normally have to do is designate the portions of the record to be transmitted to the state Supreme Court. Yes, Your Honor. I believe that it is part of the record before you at this time. We were up on summary judgment on two separate issues. PPL moved for summary judgment both on the constitutionality of this question, as well as a Scherner-style summary judgment motion saying, obviously, if it is unconstitutional, these people can't meet the Scherner standard as well. So this Court has a fully developed record either way. We would ask that this Court send this back to the Montana Supreme Court. We believe at this time any impediment on their part has been removed and answered and satisfied, and we appreciate this Court's attention. The district court had twice framed the question in a particular way. Is there any way that you would modify the framing of the question from what the Court had previously proposed? I don't believe that the Court's framing of the issue itself was the difficulty. The difficulty came in what are the agreed facts, and of course with an undeveloped record, having agreed facts is near to impossible. At this point, we have two motions for summary judgment. So at this point, the Court would be presented with not only that issue, but also with the facts that have been cited by the record, which the Montana Supreme Court looks at the same way this Court does, and that is in the light most favorable to the non-moving party. Why don't you say the balance of your time.  Thank you, Your Honor. Good morning. May it please the Court, Rob Stirrup, Holland at Heart, appearing on behalf of PPL Montana. I'm here along with co-counsel Carl Gilmore from Seattle. We understand that there may be a temptation on the part of this panel to certify a Montana constitutional question. And that's usually why we certify things, right? We're not the Montana Supreme Court, and whatever we decide here as a practical matter is, for all intents and purposes, irrelevant except for purposes of this case. If they come along in the next case and tell us, Ninth Circuit, you were wrong as a matter of Montana constitutional law. Indeed. And I thought about how I would be viewing this case if I were in the shoes of this panel. Would I not be saying to myself, let's let the Montana Supreme Court take a look at these issues? And I frankly might not be here advocating a different result, but for two things. First, as able counsel for the Brady's has pointed out, we've tried that. I've heard it said that insanity can be defined as the act of doing the same thing in precisely the same way over and over in hopes of yielding a different result the next time. Yeah, but you forgot the other counter to that. Which is? Third time's the charm. You want to sit down now? And Peyton Manning isn't going to agree with what you just said either. Well, it may be that we'll find out the clash of those two aphorisms turns out. But, in fact, we have tried this before, and the court with the issues broadly presented declined to present it, to address it. You know, I recall attending a seminar some time ago in which a clerk for the Supreme Court, U.S. Supreme Court, spoke about certiorari and the factors the court looks at. And one of them is the underlying facts of the case. Are the facts such that this case presents a really ample opportunity to explore the fundamental issue? And we would submit that a subtext of the Montana Supreme Court's decisions in this case is simply that the facts of this case. I think you're right. So maybe you could jump straight to the point, which is what facts are not available? What is different here or insufficiently different to suggest that the Montana Supreme Court will still find the record inadequate? Because I think this is and would be viewed as a garden variety negligence case. The factual record that is developed and submitted the third time does not differ in kind from the factual record that was submitted the first time and the second time. Well, what about the 27 depositions, the thousands of pages of discovery and the expert? We went through that exercise. But you didn't have that the last time. I mean, is that a significant change in terms of the posture of the case? Well, I would suggest that it is not, although certainly one could argue that perhaps the Supreme Court might be more inclined to look at it, knowing that those depositions have been taken. But here's why I would suggest that the Supreme Court might be inclined to decline the question for a third time. What we have here is a set of facts that are entirely consistent with several pre-Schirner decisions in which the Montana Supreme Court rather routinely rejected independent tort claims. And there are two in particular I briefly discussed, Noonan and Great Western Sugar. Both involved conveyor systems. Both involved allegations. The employer knew of defects, that workers had been injured on prior occasions, and that safety regulations were violated. Applying the standard pre-Schirner conventional intentional left jab test, the Supreme Court routinely said this is not the kind of intentional left jab that we need to see in order to find an exception. What I'm suggesting is, having looked at the facts as played in the complaint, which was what was presented earlier, and having seen that this is really much like a Noonan case, like a Great Western case, that our Montana Supreme Court, as with the U.S. Supreme Court in a cert case, simply said this really doesn't give us the opportunity to plume the breadth and depth of the constitutional issues that are presented. But the only thing that we don't have here is a full-blown trial on the merits with a judgment in favor of one party or the other, and the advantage that the winning party would have of being able to argue to the Montana Supreme Court that all of the facts must be viewed in the light most favorable to support the judgment. Why is that any different from your opponent's point that on summary judgment, the Montana Supreme Court can look at this extensive factual record and interpret those facts in the light most favorable to the non-moving party in analyzing the constitutional questions? They certainly can. That proposition has been accurately stated by counsel and by Your Honor. But where does it take us? That's our question. Well, it's just a constitution. I mean, it's a pure matter of law. Is this statute constitutional or not? With great respect for my colleagues on the Montana Supreme Court, this is not rocket science in terms of answering the question. And it's not an as-applied challenge. Right. And that is what has, frankly, befuddled us from the beginning. So your argument is that this case might well appear to the Montana Supreme Court as a negligence case, that in that circumstance, facially, on a facial standard, where you have to demonstrate that there's no reasonable application of the statute, they would beg the question because they've decided that they don't want to venture out into that until they get a case where it would more squarely present the constitutional issues. Exactly. We submit that as the obvious subtext of the Supreme Court's actions. And for that reason, we don't think a third attempt is going to be worthwhile. Now, in terms of the practical aspect of this, what is your expectation of how long, assuming you're correct, how long does it take the Montana Supreme Court to act? What kind of, assuming your scenario plays out, how much time are we talking about to test it? Well, if the Montana Supreme Court were presented with this question, then we've seen from past experience that can it take anywhere from a half a year to a year before we get a decision on whether there's going to be a decision. So it would be certainly some time. And it's not clear what the procedure would be. The other point I would make is we think that the constitutional questions here are not novel or unique, and perhaps that also is a subtext of the Supreme Court's election not to take this particular case in order to plume those issues. Of course, we do have an intervening change in the statute in light of post-sure, do we not? We do. And were this a case that involved a constitutional question as to whether there should be any exception to employer exclusivity, then perhaps one could say that that intervening change. But what we have here is the Constitution addresses that, doesn't it? It does indeed, and that's where I was headed. Our Montana Constitution, Article II, Section 16 expressly provides that an employer is immune from tort lawsuits. The scope of an exception is up to the legislature, whether broad or whether narrow. And the constitutionality of the exclusivity principle was affirmed by our Montana Supreme Court in 1919. And following adoption of the 1972 Constitution, our Montana Supreme Court in Raessler said this. I'll find my quote. They said, quote, The Montana Constitution provides that the state may deprive an employee of full legal redress against his employer. This is an express constitutional recognition of the rationale originally stated in Shea, the 1919 decision. So for these reasons, we don't perceive that there's anything about these particular issues that are novel or unique. We think the Supreme Court has told us a couple of times this is not the appropriate case to plume the issues raised by the plaintiffs. And with respect, we would suggest that certification should be denied. Okay. Thank you. Having argued this at the Montana Supreme Court prior, I can tell this court that the Montana Supreme Court was not concerned about whether this was an ordinary variety negligence case or not. The court's concern was directly to the heart of whether the constitutional challenge was a valid challenge to the Workers' Comp Act as it is stated currently. If this court takes on this case, please keep in mind that what the court is going to be asked to do is not decide whether or not this is a variety negligence case, as has been suggested by counsel, but you're going to be asked to decide whether the statute itself is constitutional. That's the concern that I was raising with your opposing counsel. I mean, we can give you an answer to that question, but this ticket is good for one ride this day only, and it isn't going to help anybody down the road. I couldn't agree more, Your Honor. And the Bradys have waited a long time for an answer to this question. And we believe that waiting a little bit longer isn't going to hurt that at this time. I think you've said this in your written submission, but if we were to find that the statute is constitutional under the Montana Constitution, then you lose, do you not? Yes, then we lose. And I would ask that this court just recognize momentarily what the Montana Supreme Court said, and that was that this is not a case, this is not a challenge that has been seen before in Montana. Specifically, the court said, we do not have sufficient facts before us upon which we can render a precedential opinion on the substantial and significant constitutional questions posed. Your Honor, as you were asked about the timeline of the Montana Supreme Court, we can also tell you from experience that once it was recertified and the glitch between the federal court and the state court was resolved, it only took the Montana Supreme Court 10 days to say, we aren't going to accept this. In this case, that's what we're talking about, and then it can rightfully come here. Your Honor, if they were to say no for the third time, it wouldn't take them very long to tell us, we've told you twice, night circuit, wake up and smell the coffee. I think that's absolutely right. But I doubt they're going to say that. I suggest they will say the third time's the charm. Okay. So thank you both. The cases have been adequately briefed, so there's really no certification we were interested in. All right. The Brady case is submitted, and the last case on calendar, Salina v. Providence Hospice, is also submitted. And that will put us in recess for the day. All rise. This court will recess and adjourn. Thank you.
judges: Fisher, Tallman, Mills